McKinney, J.
delivered the opinion of the court.
The complainants are the distributees and widow of Joseph H. Johnson, deceased, who died in March, 1837, and of whose estate the defendant R. S. Kay was appointed administrator. This bill is brought for an account, against the administrator and his sureties in the administration bond. An account was taken in the chancery court, to which exceptions were filed by both parties. The exceptions were disallowed by the chancellor, and a decree pronounced for the balance reported due from the administrator, and an appeal was prosecuted to this court by both parties.
The only question, material to be considered, arises upon the exception taken on behalf of the defendants to the report which charges the administrator with the sum of twenty-five hundred dollars, as profits alleged to have been *143 realised by him, from a sale of a portion of the assets of the estate. *
It appears, that Joseph H. Johnson, for some years prior to his death, was a dealer in shoes, in the city of Nashville. That the value of stock on hand, which came to the hands of the administrator amounted to upwards of fifteen thousand dollars, at eastern prices, and, consisted in part of a new supply, purchased by Johnson recently before his death, amounting to eight or nine thousand dollars, at invoice cost. It further appears, that Kay continued to dispose of the goods, by retail, from the date of his administration, which was in August, 1837, until the 6th of October following — when he sold out the remaining stock to William J. Earthman, a clerin the establishment at private sale, for $11,509 20. The goods were sold to Earthman, a young man of limited means at invoice cost — nothing was added for exchange, insurance, cost of transportation, and other expenses, incident to the delivery of the goods at Nashville, which from the proof, amounted, in the last purchase to $1037 20, and probably at the same rate on previous purchases.
The sale to Earthman was at six, twelve, and eighteen months credit. By the terms oí the sale, the payment of the money was to be secured by three notes, with C. Lanier, as surety to two of them, and Thomas Crutcher to the third. Possession of the goods was delivered before the execution of the notes — afterwards two of the notes were executed according to the agreement; the third, never was.
The goods were not removed by Earthman, who continued to occupy the house, in which the business had been previously carried on.
In two or three weeks, after the sale to Earthman, Kay became a secret partner with him in the business, upon an agreement to share equally in the profits from the beginning, *144 and to assume an equal share of the liabilities, including the payment of said three qotes, given for the stock of goods, which formed the capital of the concern. Some months after this 'partnership agreement was entered into, Kay sold out his interest to one Clopton at twenty-five hundred dollars profit; and, the question is, should he be held to account to the estate for this sum, as was decreed by the chancellor. We think, he ought.
An administrator, having the interest in the goods of the deceased, may alien, or dispose of them at private sale, or otherwise, and in doing so, generally speaking, he will incur no liability beyond accounting for their value. Such sale, if 'bom, fide, vests a good title in the purchaser, and, the goods cannot be followed even by creditors of the estate. In such case, the administrator might, unquestionably, at any subsequent time, re-purchase the goods, or, become interested therein as a partner, or joint owner, and thereby divide profits to himself, without liability to account to the estate for such profit. But speculations of this character, are open to suspicion.
It is a well established principle of equity, that an executor or administrator, will not be permitted under any circumstances, to derive a personal benefit from the" manner in which he transacts the business, or manages the assets of the estate. Any profit thus derived, is considered so much increase of the trust fund in his hands, and as belonging to the estate. A transaction of the character in question, will not receive the sanction, of a court of equity, unless, upon a scrupulous examination of all the circumstances, it shall be found free from the imputation of fraud, or, of being a mere scheme and artifice to secure a personal benefit to the administrator, under pretext of a sale of the assets to a third person.
Such is not this case, in our opinion. The goods were sold privately to the clerk, or agent of the administrator, and, at a *145 price considerably under what they ought to have commanded, according to the proof. Possession was parted with, to a person known to the administrator to have but little means, without requiring the security stipulated to be given. No satisfactory, reason is shown, why the terms of sale, if designed to be absolute, were not complied with. The proposition to become interested as a partner in the purchase with Earth-man, was made by the administrator, as he admits; and was to be kept secret. Prom these facts, we Jhirik, it may well be inferred, that the sale to Earthman was not in good faith,' but, upon'a secret trust, for the benefit of the administrator;- and, we are therefore, of opinion, that he was properly charged with the sum of twenty-five hundred dollars profit, realised from the sale to Clopton. Holding the administrator liable for this sum, we do not think, he should be made to account for the sum of $512 37, the difference between the value of the goods, as stated in his inventory, and the sum actually accounted for by him, as the proceeds of the sales thereof.
The decree of the chancellor will be affirmed.